AO 91 (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**FILED**
2.2.05
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

vs.

GUSTAVO ADOLFO CARDENAS
ALEJANDRO DIAZ-RUEDA

**CRIMINAL COMPLAINT**

CASE NUMBER: 3:05-m-0032 TEM

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief. On or about February 1, 2005, at Jacksonville, in the Middle District of Florida, and elsewhere, defendants,

did knowingly, willfully, and intentionally possess, cause to be possessed, and aid and abet in the possession of, with intent to distribute, heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more,

all in violation of Title 21, United States Code, Sections 841(a)(1) & 841(b)(1)(A), and Title 18, United States Code, Section 2. I further state that I am a Special Agent, United States Drug Enforcement Administration, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:     ☒ Yes ☐ No

_____
Signature of Complainant
BRUCE D. SAVELL, Special Agent
U.S. Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

February 2, 2005                                    at     Jacksonville, Florida
Date                                                        City and State

THOMAS E. MORRIS
United States Magistrate Judge                             _Thomas E. Morris_
Name & Title of Judicial Officer                           Signature of Judicial Officer

## AFFIDAVIT

I, Bruce D. Savell, being duly sworn, state the following:

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been so employed for approximately fourteen years.

2. This affidavit is being submitted in support of a Criminal Complaint charging Gustavo Adolfo Cardenas ("Cardenas") and Alejandro Diaz-Rueda ("Diaz"), with possession with intent to distribute heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

3. On February 1, 2005, after receiving a tip from an individual, I reviewed an Amtrak passenger record which revealed that two individuals named Gustavo Caidenas[1] and Alejandro Diaz were currently traveling in a sleeper unit on Amtrak train number 92, car 9211, sleeper unit number 5. The Amtrak passenger record indicated that these individuals' tickets had been purchased in Miami, Florida on February 1, 2005 for a one-way travel from Miami, Florida to New York, New York. The Amtrak passenger record and information from the same individual referred to above further indicated that the tickets for Diaz and Cardenas totaled $476.00 and had been paid for with cash shortly before the train's departure from Miami, Florida.

4. On February 1, 2005 at approximately 11:10 p.m., I, Federal Bureau of Investigations (FBI) SA Orlando Quant, Immigration and Customs Enforcement SA Troy Clausen and another law enforcement officer boarded train number 92 in Jacksonville,

---

[1] The name on the ticket was spelled Caidenas but during a subsequent interview of Gustavo Cardenas I learned that the correct spelling of the name is Cardenas.

Florida shortly after the train arrived. The train was scheduled for a brief layover in Jacksonville, Florida. After walking to room number 5 of car 9211, I and SA Quant knocked on the door of sleeper unit number 5. As the door opened I and SA Quant observed two Hispanic males inside the room who were later identified as Diaz and Cardenas.

5. I identified myself and SA Quant as law enforcement officers and I informed both individuals that they were not under arrest, were free to leave and were free to decline any interview or search requested by us. I then asked both individuals if they understood English and Diaz informed me that he did understand English and that he was from Colombia, South America. I then asked Cardenas if he spoke English and he answered, "No." When I asked Cardenas where he was from, he stated, in English, that he was from Colombia. SA Quant, who is fluent in Spanish, then advised Cardenas, in Spanish, that we were law enforcement officers, that they were not under arrest, were free to leave and were free to decline any interview or search requested by us. I then asked Diaz if I could review their train tickets and identification. Diaz handed me a Amtrak envelope which contained ticket stubs for Diaz and Cardenas. Cardenas and Diaz then handed SA Quant their identification cards. After reviewing and returning the documents, I asked Diaz if he was carrying any luggage and SA Quant asked Cardenas, in Spanish, if he was carrying any luggage. Cardenas identified a red suitcase as his and Diaz identified a grey duffle bag as his. I asked Diaz if his bag contained any weapons, drugs or large sums of U.S. currency and Diaz indicated that it did not. SA Quant asked Cardenas the same thing in Spanish and Cardenas indicated that it did not contain any of those items. Thereafter, I asked Diaz for his consent to

2

search his grey duffle bag and Diaz stated, "Okay." SA Quant asked Cardenas, in Spanish, for consent to search his red suitcase and Cardenas stated, "Yeah, okay," in Spanish. Diaz then handed his grey duffle bag to SA Quant who passed the bag to SA Clausen. SA Clausen searched the grey duffle bag and located a large Elite Whey Protein container. SA Clausen opened the container and inside two plastic zip lock bags which contained a total of 103 rubber pellets which I later determined to contain a light brown powdery substance. Based upon my training and experience, I believed the pellets to contain heroin. I then took the red suitcase and searched it and found nothing illegal inside.

6.   Diaz and Cardenas were placed under arrest. I advised Diaz, in English, of his constitutional rights using a DEA-13a rights form and SA Quant advised Cardenas, in Spanish, of his constitutional rights using a DEA-13a rights form. Both indicated that they understood their rights.

7.   After acknowledging his constitutional rights, Diaz stated, in substance and among other things, the following:

(a)   that the "pellets" found inside the whey protein container consisted of heroin;

(b)   that an individual named "German" had given Diaz and Cardenas the heroin pellets in Bogota, Colombia on Saturday (January 29, 2005);

(c)   that Diaz ingested 65 of the heroin pellets during the evening hours of Saturday (January 29, 2005) and Cardenas ingested 38 heroin pellets during the evening of Saturday (January 29, 2005);

(d) that Diaz and Cardenas traveled via American Airlines from Bogota, Colombia to Miami, Florida on Sunday (January 30, 2005);

(e) that German had promised Diaz and Cardenas that they would be paid $5,000 each to make the delivery of the heroin to an individual who would call Diaz on his cellular telephone with delivery instructions upon arrival in New York;

(f) that upon arrival in Miami, Florida, Diaz and Cardenas traveled to Diaz's aunts residence in Miami, Florida where Diaz and Cardenas passed the heroin pellets;

(g) and that Diaz and Cardenas purchased the whey protein container at a GNC store in Miami, Florida and together concealed the heroin inside the container.

7. After acknowledging his constitutional rights, Cardenas stated, in substance and among other things, the following:

(a) that an individual named German gave them heroin and $5,000;

(b) that Cardenas originally met Diaz at a gym in Bogota and has known Diaz for approximately two years;

(c) that he (Cardenas) ingested 38 heroin pellets on Saturday night;

(d) that, at German's request, he and Diaz purchased the whey protein container and placed the heroin pellets inside the container;

(e) and that an unknown person would call Diaz on Diaz's cellular telephone number (305) 772-7962 later with delivery instructions.

8.  I field tested the substance found in the pellets in the whey protein container. The substance tested positive for the presence of heroin. I also weighed the pellets and determined the combined weight to be approximately 1.27 kilograms.

9.  Based on the foregoing, I have probable cause to believe that Gustavo Adolfo Cardenas and Alejandro Diaz-Rueda have committed a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) in that on February 1, 2005, they knowingly, willfully and intentionally possessed with intent to distribute heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more,

_____
BRUCE D. SAVELL
Special Agent
U.S. Drug Enforcement Administration