UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 3:05-cr-41-J-25HTS

GUSTAVO ADOLFO CARDENAS

### UNITED STATES' NOTICE OF MAXIMUM PENALTIES, ELEMENTS OF OFFENSE, PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS

The United States of America, by and through its undersigned Assistant United States Attorney, states as follows:

A.   MAXIMUM PENALTIES

The defendant has expressed a desire to enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy to distribute heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

Count One carries a mandatory minimum term of imprisonment of at least 10 years and up to life, a fine of $4,000,000, or both, a term of supervised release of at least 5 years, and a special assessment of $50 per felony count for offenses committed prior to April 24, 1996, $100 per felony count thereafter; for organizations the amounts are "$200" and "$400" respectively, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community.

B.  **ELEMENTS OF THE OFFENSE**

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:  That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and

Second: That the defendant, knowing the unlawful purpose of the plan, willfully joined in it.

C.  **PERSONALIZATION OF ELEMENTS**

1. Do you admit that, from on or about January 29, 2005 through on or about February 1, 2005, at Jacksonville, in the Middle District of Florida, at Miami, in the Southern District of Florida, and elsewhere, you, Alejandro Diaz-Rueda, and other persons came to a mutual understanding to try to accomplish a common and unlawful plan, that is, to distribute heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more?

2. Did you, knowing the unlawful purpose of the plan, willfully join in it by, among other things, together with Diaz-Rueda, transporting 103 rubber pellets containing 1 kilogram of heroin from Miami, Florida to Jacksonville by Amtrak train on February 1, 2005, with the intent that this heroin be subsequently transported to and distributed in New York City?

D.  **FACTUAL BASIS**

1.  **Purpose**

The following facts are set forth to aid the Court in making an inquiry to satisfy it that there is a factual basis for the plea of guilty in accordance with Rule 11(f),

2

Fed. R. Crim. P. The government reserves its right to provide all relevant information concerning the defendant and the offense committed to the Probation Office and the Court for sentencing purposes.

2. Facts

During the period from on or about January 29, 2005 through on or about February 1, 2005, at Jacksonville, in the Middle District of Florida, at Miami, in the Southern District of Florida, and elsewhere, Alejandro Diaz-Rueda ("Diaz-Rueda") and Gustavo Adolfo Cardenas ("Cardenas"), and other persons conspired and agreed to obtain and distribute heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more. On January 29, 2005, Cardenas and Diaz received a total of 103 rubber pellets containing heroin from individuals in Bogota, Colombia, and planned to transport the heroin to New York City for subsequent distribution. Cardenas ingested 38 of the heroin pellets and Diaz ingested the other 65 heroin pellets. On January 30, 2005, Cardenas and Diaz flew from Bogota to Miami, Florida via an American Airlines flight. The two men passed the heroin pellets in Miami and concealed them inside a large plastic canister which also contained a powdered nutritional supplement.

On or about February 1, 2005, Cardenas and Diaz boarded Amtrak train #92 in Miami that was bound for New York City, having paid cash for a sleeper compartment on board the train (car 9211, room 5). The two men had in their possession the heroin contained in the plastic canister inside a gray duffle bag. At approximately 11:00 p.m. on that evening, the Amtrak train made a scheduled routine stop in Jacksonville for a brief layover. Shortly thereafter, DEA Special Agent Bruce

Savell and FBI Special Agent Orlando Quant boarded the train, proceeded to car 9211 and made contact with Cardenas and Diaz after knocking on the door of room 5.

Agent Savell identified himself and Agent Quant as law enforcement officers and informed Cardenas and Diaz that they were not under arrest, were free to leave and were free to decline any interview or search requested by the agents. When asked, Diaz indicated that he spoke English and that he was from Colombia. Cardenas indicated that he did not speak English and that he was from Colombia. At that point, Agent Quant, who is a fluent Spanish speaker, advised Cardenas in Spanish that he and Agent Savell were law enforcement officers, that they (Cardenas and Diaz) were not under arrest, were free to leave and were free to decline any interview or search requested by the agents. Agent Savell asked Diaz if he could see Diaz's passport, and Diaz stated in substance that he had left his passport in Miami. Agent Quant asked Cardenas in Spanish if he could see Cardena's passport, and Cardenas stated in Spanish that he did not have his passport. Diaz then handed Agent Savell the Amtrak ticket stubs for the two men, and both men handed Agent Quant their identification cards. Agent Savell reviewed the documents and then asked Diaz if he was carrying any luggage and Agent Quant asked Cardenas the same question in Spanish. Cardenas identified a red suitcase as his and Diaz identified a gray duffle bag as belong to him (Diaz). Agent Savell asked Diaz if his bag contained any weapons, drug or large sums of U.S. currency, and Diaz indicated that it did not. Agent Quant asked Cardenas the same question in Spanish and Cardenas indicated in Spanish that his suitcase did not contain any of those items. Agent Savell then asked Diaz for consent to search his gray duffle bag and Diaz stated, "Okay." Agent Quant asked Cardenas

4

the same question in Spanish and Cardenas stated in Spanish, "Yeah, okay." Cardenas then removed Diaz's gray duffle bag from the overhead compartment and handed the bag to Diaz. Diaz handed the bag to Agent Quant who passed the bag to another agent who was standing approximately 10 feet away from Agent Savell outside the room. Agent Savell searched the gray duffle bag and inside discovered a large plastic "Elite Whey Protein" canister with two plastic bags containing the 103 rubber pellets containing heroin. Cardenas and Diaz were placed under arrest.

After being advised of their constitutional rights, Cardena and Diaz both advised, in substance and among other things, that the "Elite Whey Protein" canister contained heroin and that they were being paid $5,000 each to transport the heroin to New York City. Subsequent laboratory analysis revealed that the 103 rubber pellets contained 1,000 grams of heroin.

Respectfully submitted,

PAUL I. PEREZ
United States Attorney

By: /s/ D. RODNEY BROWN
D. RODNEY BROWN
Assistant United States Attorney
Florida Bar No. 0906689
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone: (904) 301-6300
Facsimile: (904) 301-6310
Email: rodney.brown@usdoj.gov

U.S. v. GUSTAVO ADOLFO CARDENAS    CASE NO. 3:05-cr-41-J-25HTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2005, the foregoing was filed in open court and a copy of the foregoing was hand delivered in court to the following:

Roland Falcon, Esq.

/s/ D. RODNEY BROWN
D. RODNEY BROWN
Assistant United States Attorney